UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-61580-CIV-LENARD/GOODMAN

BLANCO GMBH+CO. KG,

    Plaintiff,

v.

VLANCO INDUSTRIES, LLC, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION TO ENJOIN DEFENDANT'S PROSECUTION OF WESTERN DISTRICT OF NORTH CAROLINA ACTION OR TO DIRECT NORTH CAROLINA COURT TO <u>TRANSFER ACTION TO THIS DISTRICT</u>**

Defendant Vito Antonio Laera ("Laera") filed a federal lawsuit against Plaintiff Blanco GmbH KG ("Blanco") and Blanco's lead counsel, Scott Dangler ("Dangler"), in the Western District of North Carolina (the "North Carolina Case") on January 14, 2015. [ECF No. 355 (notice filed by Laera informing this Court of the recently-filed North Carolina Case)]. Laera's Amended Complaint (the "Amended Complaint") [ECF No. 366-1] in the North Carolina Case features **22** purported causes of action and is replete with references to proceedings in the present action in the Southern District of Florida, which was filed in August 2012 [ECF No. 1 (complaint filed by Blanco)].

United States District Judge Joan A. Lenard referred [ECF Nos. 331; 389] to the Undersigned Blanco's motion [ECF No. 366] to enjoin Laera's prosecution of the North

Carolina Case or, in the alternative, to direct the North Carolina Court to transfer the action to this District. In its motion, Blanco also requested an Order enjoining Laera from further Court filings without judicial permission as a vexatious litigant, which Judge Lenard granted in part,[1] leaving the remainder of the motion (to enjoin or direct the transfer of the North Carolina Action) for the Undersigned to address through a Report and Recommendations.

Laera filed a response [ECF No. 377] to Blanco's motion, but it is entirely unclear from the text of the response whether Laera is addressing the portion moving to enjoin his filing privileges or the portion that is before the Undersigned presently. Regardless, Laera's response is devoid of any pertinent facts, except for the confirmation that he filed the North Carolina Case [ECF No. 377, p. 3]. It is merely a vague list of misconduct allegations aimed at other parties, counsel in the case and the judiciary [*Id.*, at pp. 1-3], interspersed with broad (and often rambling) statements about rights and due process [*Id.*, at pp. 1-2]. Concerning the particular legal issues raised by Blanco's motion (specifically, (1) whether the 'first-to-file rule' applies to the North Carolina Case, and if it does, (2) whether this Court is empowered with the legal authority to enjoin the North Carolina Case), Laera's response offers the Undersigned no substantive guidance on the facts or the law.

---

[1] *See* ECF No. 389 (Order of District Judge Joan A. Lenard declaring Laera a "vexatious litigant" and enjoining him from further Court filings without prior judicial permission, in order to curb his "impulsive, injudicious, and indefatigable practice of filing motions and 'notices.'")

Nonetheless, having considered the motion, the response (such as it is), and the pertinent portions of the record, the Undersigned **respectfully recommends** that the motion be **granted** for the reasons set forth below.

I.     BACKGROUND

This action arises from Plaintiff's claims of infringement of its Blanco trademarks which it uses in connection with, *inter alia*, sinks and faucets and which are the subject of U.S. trademark registrations. The action was "terminated" by the entry of a Consent Judgment [ECF No. 76] on April 5, 2013 pursuant to a Stipulation of Settlement [ECF No. 95-1] and Addendum [ECF No. 95-2] -- but the proceedings have hardly ended.

In June, 2013 -- approximately two months after the entry of the Consent Judgment -- post-judgment motion practice began. [*See* ECF Nos. 77-79]. In January, 2014, United States District Judge Robin Rosenbaum (now a Circuit Court appellate judge), adopting a Report and Recommendation of Magistrate Judge Patrick M. Hunt exhaustively recounting the post-judgment history in the case at that time, found Laera in contempt of court for applying to register, using and licensing certain trademarks and domain names; failing to transfer to Blanco certain domain names; and re-directing transferred domain names to infringing content. [ECF No. 195 (adopting ECF No. 185)].

Significantly, the Court found Laera in contempt for, among other things: the application for federally registered trademarks including the term Vlanco; the registration of domain names using variations of the terms Blanco, Vianco or Vlanco;

and the licensure of trademarks and domain names using variations of the terms Vlanco, Linea Vlanco and Linea Blanco. [*See id.*]. All of Laera's contumacious activities implicated his use of designations identical or confusingly similar to the Blanco Marks -- designations that the Court, in its Consent Judgment, prohibited him from using. [*See* ECF No. 76]. The Court awarded $600,000 in liquidated damages and more than $220,000 dollars in attorneys' fees to Blanco as a result of Defendant Laera's contempt. [ECF Nos. 195; 249]. But this hardly ended the post-settlement proceedings.

Mere months after Judge Rosenbaum found Laera in contempt the first time, Blanco filed a *third* motion for contempt [ECF No. 228], which set off a flurry of filings from both sides,[2] ultimately leading to an Omnibus Report and Recommendations [ECF No. 347] by the Undersigned (issued after a day-long evidentiary hearing on all motions [ECF Nos. 322; 339]) that was adopted by the District Court [ECF No. 353], finding Laera in contempt and granting monetary and injunctive relief concerning Laera's contumacious conduct.

Contemporaneous to the District Court's adoption of the Omnibus Report and Recommendations however, Laera filed a new lawsuit in the Western District of North Carolina [ECF Nos. 355; 366-1] alleging, *inter alia*, that Blanco and its counsel, Dangler, have colluded and conspired to deprive Laera of his rights and to inflict personal

---

[2] Blanco later added a *fourth* motion for contempt [ECF No. 286], while Laera responded with *five* individual motions for contempt against Blanco [ECF Nos. 233; 230; 255; 270; 290], as well as a Motion for Injunction [ECF No. 291].

4

damage upon Laera through an abuse of the judicial process and breaches of contract. In the Amended Complaint in the North Carolina Case, Laera refers to this present case number (12-61580) and/or filings entered on this case docket no less than 20 times in 11 pages, centering each of his allegations around activities of Blanco, its corporate representatives and corporate counsel in this Court. [ECF No. 366-1]. On July 21, 2015, the Court in the North Carolina Case *sua sponte* stayed that case pending the outcome of the present motion to enjoin that case.

## II.     LEGAL STANDARD

The Eleventh Circuit follows the "first-to-file rule," pursuant to which, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed [case.]" *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135-36 (11th Cir. 2005). The first-to-file rule is a doctrine of federal comity, developed to address the issue of "[c]ompeting lawsuits involving the same parties and the same issues in separate jurisdictions wast[ing] judicial resources and [leading] to conflicting results." *In re Checking Account Overdraft Litigation*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012) (citing *Thomas Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002)).

"Under the 'first-to-file rule,' the entire action should generally be decided by the court in which the action was first filed." *In re Checking Account Overdraft Litigation*, 859 F. Supp. 2d at 1324 (citing *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). Most

importantly to the present motion, in addition to determining which court may decide the merits of substantially similar cases, the first-to-file rule also "generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *see also Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)[3] (upholding an injunction issued by the United States District Court in New York preventing plaintiff from proceeding with a case in the United States District Court in Texas because "[b]y virtue of its prior jurisdiction over the common subject matter and its injunction of suit involving that subject matter in Texas, the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in New York belonged to the United States District Court in New York"); *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) ("the 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated") (citing *Mann Mfg.*, 439 F.2d at 408); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947 ("the court in which an action is first filed is the appropriate court to determine whether subsequently filed

---

[3] *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206 ("decisions of the United States Court of Appeals for the Fifth Circuit (the "former Fifth" or the "old Fifth"), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit").

6

cases involving substantially similar issues should proceed.") (citing *Mann Mfg.*, 439 F.2d at 408).

## III. ANALYSIS

As stated above, the central issues for the Undersigned to decide in this motion are: (1) whether the first-to-file rule applies to the North Carolina Case, and if it does, (2) whether this Court is empowered with the legal authority to enjoin the North Carolina Case. The Undersigned finds that (1) the first-to-file rule **applies** in this matter, and (2) that the District Court **can and should** enjoin Laera's prosecution of the litigation filed in the Western District of North Carolina. The Undersigned addresses each of the issues in turn below, ultimately recommending that Blanco's motion should be granted.

### A.     <u>The North Carolina Case is Subject to the First-to-File Rule</u>

Even a cursory reading of Laera's Amended Complaint in the North Carolina Case makes clear that he is attempting to litigate issues from the present case in a new, unrelated forum and in an entirely new action. As noted above, Laera references the present matter no less than 20 times in 11 pages, while revolving each claim in his 22-count civil action around the actions of parties, counsel and the judiciary in this case in the Southern District of Florida.

A count-by-count examination of Laera's Amended Complaint confirms this. The substantive allegations in Counts 1 and 2 ("Collusion" and "Civil Conspiracy"

7

respectively) are that Dangler and Blanco "acted in concert to deprive [Laera] of rights and coerce [Laera] into an unfair transaction[.]" [ECF No. 366-1, p. 2]. The "unfair transaction" to which Laera refers is the Stipulation of Settlement [ECF No. 95-1] in this very case. Under the first-to-file rule, issues surrounding the fairness of this "transaction" are purely within this Court's jurisdiction.

The fairness of a settlement agreement is not simply an "overlapping" issue either, but, rather, a central issue to the disposition of this very case. In fact, pending before the Undersigned presently are myriad "notices" filed by Laera [ECF Nos. 303; 304; 307; 308; 315] primarily regarding Laera's allegations of misconduct in the settlement of this case. Laera has already prematurely raised these same issues with the Eleventh Circuit as well, which denied his allegations of misconduct as premature considering their still-pending nature in the District Court. *See Blanco GmbH + Co. KG v. Laera*, No. 14-11814 (slip opinion), pp. 11-13 (11th Cir. July 16, 2015). Regardless though, it is abundantly clear that the issues raised in Counts 1 and 2 overlap with the present litigation, which was filed in August 2012, long before the North Carolina Case.

Laera groups Counts 3, 4, 5, 6, 7, 8 and 9 together in a single set of allegations in the Amended Complaint. [ECF No. 366-1, pp. 3-4]. These Counts allege that Blanco and Dangler misled then-presiding District Judge Rosenbaum through their stipulation of dismissal [ECF No. 75], which he alleges was procedurally and substantively improper, eventually leading to Judge Rosenbaum's dismissal of the case [ECF No. 76]. There is no

8

doubt again that these issues not only "overlap" with the present litigation, but are central to the final disposition of this case.

Just as with Counts 1 and 2, Laera's abundant "notices" that are presently pending address these very same allegations, while the Eleventh Circuit also denied these very allegations as premature in its recent decision. *See Blanco*, No. 14-11814, pp. 11-13. Thus, again, these are matters to be addressed by the Court in which they were first filed: the Southern District of Florida.

Laera groups Counts 10, 11 and 12 together in a single set of allegations in the Amended Complaint as well. [ECF No. 366-1, pp. 5-6]. These claims center around comments that Dangler allegedly made before this Court while prosecuting this case. Once again, the issues in these Counts center directly on matters before this Court in the Southern District of Florida. Accordingly, any issues that Laera has with Dangler's comments and their subsequent effect on him are to be addressed (and are presently being addressed) in this very case, which was first-filed and in which the apparently offensive words were uttered.

Laera also groups Counts 13, 14, 15 and 16 together in a single set of allegations in the Amended Complaint. [ECF No. 366-1, pp. 6-7]. The allegations in these counts center on Blanco allegedly redirecting domain names associated with Laera to offensive websites. This is a matter that has been addressed by both the District Court and the Eleventh Circuit in this case. At the evidentiary hearing before the Undersigned in

November 2014, Laera even personally acknowledged which court must address any issues he has on this subject: "if it is the redirection of the domains, yes, I agree. It's a matter that's been already discussed, and if I have a problem with it I need to go to the appeals court." [ECF No. 339, p. 170]. Therefore, once again, the subject of these Counts should properly be addressed in the Southern District of Florida case -- as Laera himself acknowledged -- and in fact were part of Laera's appeal recently heard and denied by the Eleventh Circuit. Accordingly, these too are subject to the first-to-file rule.

Laera groups Counts 17, 18, 19, 20, 21 and 22 together in a single set of allegations in the Amended Complaint as well. [ECF No. 366-1, pp. 7-10]. All of these allegations, as with Counts 13, 14, 15 and 16, concern certain domain names and actions concerning the redirection of those domain names as a result of the parties' settlement in this underlying suit. The Undersigned reiterates again exactly what Laera acknowledged in this Court in November 2014: "if it is the redirection of the domains, yes, I agree. It's a matter that's been already discussed, and if I have a problem with it I need to go to the appeals court." [ECF No. 339, p. 170]. Therefore, this matter again revolves entirely around matters that are before this Court. Accordingly, these too are subject to the first-to-file rule.

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favor[ ] the forum of the first-filed." *Manuel*, 430 F.3d at 1134-35. As outlined above, the subject

matter of the North Carolina Case does not just overlap the issues of this present case, but is instead *entirely composed of issues in this case* -- some previously decided and some still-pending. The North Carolina Case is clearly subject to the first-to-file rule.

### B. The North Carolina Case Must Be Enjoined under the First-to-File Rule

As the Eleventh Circuit explained in *Collegiate Licensing Co.*, the first-to-file rule determines which court may decide the merits of substantially similar cases, as well as "which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." 713 F.3d at 78. As shown above, each and every issue raised in Laera's Amended Complaint in the North Carolina case is either currently-pending before the Undersigned or the subject of the Eleventh Circuit's ruling on the appeal. Pursuant to the authority inherent in the first-to-file rule, the Undersigned recommends that the District Court enjoin the further prosecution of the North Carolina Case because the matters are already before this Court.

In *Collegiate Licensing Co.*, the United States District Court for the Northern District of Georgia enjoined insurers (defendants in an action that was presently before the Georgia court) from proceeding with intervention complaints[4] filed in a pending lawsuit in a California district court. 731 F.3d 71. The intervention complaints that the insurers sought to file in the California district court "involve[d] the exact same parties,

---

[4] It is important to note that the Eleventh Circuit found these intervention complaints to essentially be newly-filed complaints, because the existing California action did not in any way involve the policies of these insurers prior to their motions to intervene. *Collegiate Licensing Co.*, 713 F.3d at 78.

11

the exact same insurance policies, and the exact same legal issues as the complaint filed by [the plaintiff] in the Georgia Action." *Id.* at 78. Based upon the first-to-file rule, the Georgia district court enjoined the insurers from proceeding with their action in the California district court, and the Eleventh Circuit upheld this determination.

The Eleventh Circuit further addressed the issue of whether the Georgia court's order improperly infringed on the authority of a court of equal dignity. *Collegiate Licensing Co.*, 713 F.3d at 80-81. On that issue, the Eleventh Circuit concluded that "[t]he injunction order was not directed at the California district court. It enjoined the [insurers] from pursuing their claims in contravention of the Georgia district court's jurisdiction over [the] case of which it was initially seized before the intervention was sought or granted." *Id.* at 81. Accordingly, pursuant to the first-to-file rule, the district court first presented with the dispute between Laera and Blanco (and by extension, Blanco's corporate counsel, Dangler) is empowered to *enjoin a party* in the North Carolina Case from prosecuting that matter without impermissibly exercising any authority over a court of equal dignity.

As amply demonstrated above, the case that Laera filed in the Western District of North Carolina involves the same parties, the same subject matter and the same legal issues as the ones presented first in *this Court*. It would be inequitable, inefficient and illogical for the plaintiff in the present matter (and plaintiff's counsel) to be forced to

now defend itself on the very same issues that have already been raised and briefed (and in some instances already decided on appeal) in this original case.

It is clear to the Undersigned that Laera's contumacious conduct -- for which he was found in contempt on multiple occasions -- continues through his pursuit of this improper second lawsuit. The District Court is empowered to enjoin Laera's prosecution of that second lawsuit in North Carolina, *see Collegiate Licensing Co.*, and for the preceding reasons *should* enjoin him from doing so. Accordingly, the Undersigned **respectfully recommends** that District Judge Lenard **grant** the motion to enjoin the prosecution of the North Carolina Case..

## IV.     CONCLUSION

Pursuant to this recommendation, Defendant Vito Laera should be ordered by the District Court to dismiss the case he filed in the Western District of North Carolina or face the prospect of further proceedings for both civil and criminal contempt of court.

## V.     OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the Parties have **14** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each Party may file a response to the other Party's objection within **7** days of the objection. Failure to file timely objections shall bar the Parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the Parties from

attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

**Respectfully recommended**, in Chambers, in Miami, Florida, on July 29, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Joan A. Lenard
All counsel of record

Vito Antonio Laera, *pro se*
230 South Tryon
Suite 708
Charlotte, NC 28202