UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-61580-CIV-LENARD/GOODMAN

BLANCO GMBH+CO. KG,

    Plaintiff,

v.

VLANCO INDUSTRIES, LLC, *et al.*,

    Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATIONS ON DEFENDANT'S SEVERAL "NOTICES," AND ORDER ON PLAINTIFF'S MOTION TO STRIKE

Defendant Vito Antonio Laera ("Laera") filed several "Notices" and "Amended Notices" with the Court [ECF Nos. 303; 304; 307; 308; 315] that were referred [ECF No. 331] to the Undersigned by United States District Judge Joan A. Lenard. In the same order of referral, Judge Lenard referred Plaintiff Blanco GmbH KG's ("Blanco") motion [ECF No. 326] to strike Laera's reply [ECF No. 321][1] to Blanco's response to the Notices as unauthorized. [ECF No. 331]. For the reasons outlined below, the Undersigned **grants** Blanco's motion to strike [ECF No. 326], **denies without prejudice** Blanco's

---

[1]     Laera supplemented this filing with ECF No. 327, claiming that the Court erred in uploading his filing to the CM/ECF electronic docketing system. The Undersigned will consider Blanco's motion to strike [ECF No. 326] to encompass the striking of ECF No. 327 in conjunction with ECF No. 321.

motion for attorney's fees and costs [ECF No. 316], and **respectfully recommends** that

Laera's motions [ECF Nos. 303; 304; 307; 308; 315] be **denied**.

## I.   BACKGROUND

This action arises from Plaintiff's claims of infringement of its Blanco trademarks

which it uses in connection with, *inter alia*, sinks and faucets and which are the subject

of U.S. trademark registrations. The action was "terminated" by the entry of a Consent

Judgment [ECF No. 76] on April 5, 2013 pursuant to a Stipulation of Settlement [ECF

No. 95-1] and Addendum [ECF No. 95-2] -- but the proceedings have hardly ended.

In June, 2013 -- approximately two months after the entry of the Consent

Judgment -- post-judgment motion practice began. [*See* ECF Nos. 77-79]. In January,

2014, United States District Judge Rosenbaum, adopting a Report and Recommendation

of Magistrate Judge Patrick M. Hunt exhaustively recounting the post-judgment history

in the case at that time, found Laera in contempt of court for applying to register, using

and licensing certain trademarks and domain names; failing to transfer to Blanco certain

domain names; and re-directing transferred domain names to infringing content. [ECF

No. 195 (adopting ECF No. 185)].

Significantly, the Court found Laera in contempt for, among other things: the

application for federally registered trademarks including the term Vlanco; the

registration of domain names using variations of the terms Blanco, Vianco or Vlanco;

and the licensure of trademarks and domain names using variations of the terms

Vlanco, Linea Vlanco and Linea Blanco. [*See id.*]. All of Laera's contumacious activities implicated his use of designations identical or confusingly similar to the Blanco Marks -- designations that the Court, in its Consent Judgment, prohibited him from using. [*See* ECF No. 76]. The Court awarded $600,000 in liquidated damages and more than $220,000 dollars in attorneys' fees to Blanco as a result of Defendant Laera's contempt. [ECF Nos. 195; 249]. This too, though, was hardly the end of the proceedings.

Mere months after Judge Rosenbaum found Laera in contempt the first time, Blanco filed a *third* motion for contempt [ECF No. 228], which set off a flurry of filings from both sides,[2] ultimately leading to an Omnibus Report and Recommendations [ECF No. 347] by the Undersigned (issued after a day-long evidentiary hearing on all motions [ECF Nos. 322; 339]) that was adopted by the District Court [ECF No. 353], finding Laera in contempt and granting monetary and injunctive relief concerning Laera's contumacious conduct.

Now, Laera has filed several "Notices" with the Court purporting to bring an extensive list of alleged violations of federal rules and the Rules of Professional Conduct by attorneys in this case to the Court's attention. Laera first filed a "NOTICE of Court Violation to Federal Rules of Civil Procedure Rule 11(a) and S.D. Fla. L.R. Rule 5.2" [ECF No. 303] and a "NOTICE of Compliance to Rule 4-8.3 Reporting Professional

---

[2]      Blanco later added a *fourth* motion for contempt [ECF No. 286], while Laera responded with *five* individual motions for contempt against Blanco [ECF Nos. 233; 230; 255; 270; 290], as well as a Motion for Injunction [ECF No. 291].

Misconduct" [ECF No. 304]. The Undersigned then ordered [ECF No. 306] Blanco to respond to those "Notices" because they could be construed as motions, as some portions of them did seek certain relief from the Court (specifically, the striking of certain filings entered in this case). Laera thereafter filed amended versions [ECF Nos. 307; 308] of his first two "Notices," and the Court again ordered [ECF No. 310] Blanco to respond. Laera filed one further "NOTICE to Court of Additional Violation/Misconduct of CM/ECF Administrative Procedures Southern District of Florida 3J.(3) and RRTFB Rule 4-8.4(A) and Rule 4-1.1 and FRCP Rule 11(A)" [ECF No. 315], to which Blanco, on its own volition, responded in an omnibus filing [ECF No. 316] addressing all of Laera's various filings (collectively, the "Notices").

Because Laera's first two Notices [ECF Nos. 303; 304] were subsequently amended, the Court will disregard them and focus only on the amended versions [ECF Nos. 307; 308]. In addition, the Court will address the "Notice of Additional Violations" [ECF No. 315] filed afterwards, plus Laera's purported "Response/Opposition" to various filings [ECF No. 321], which Blanco moves to strike [ECF No. 326] as an unauthorized reply, in violation of the Undersigned's instructions concerning the briefing of Laera's Notices.

## II.    LEGAL STANDARD

It is unclear on what grounds Laera is actually relying upon for his requested relief. While Laera expends page after page pointing out purported errors in procedure

and violations of federal and/or professional rules, there is little authority cited as the basis for the relief sought (i.e. the striking of numerous filings, in particular the Consent Judgment [ECF No. 76] upon which the final disposition of this case rests).

"While courts should afford a litigant proceeding *pro se* leeway in pleadings, even *pro se* litigants must satisfy essential burdens." *Blanco GmbH Co. KG v. Vlanco Industries, LLC*, 992 F. Supp. 2d 1225, 1254 (S.D. Fla. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Among those essential burdens is actually establishing a legal foundation for relief sought. Certain portions of Laera's filings cite to Federal Rule of Civil Procedure 11 [ECF Nos. 303; 307] which does provide the potential of sanctions as relief for certain types of misconduct. Therefore, in instances where Laera cites to that rule, the Undersigned will address the purported misconduct on those grounds.

The vast majority of Laera's "Notices" simply alert the Court to "professional misconduct" pursuant to the "Rules Governing Attorney Discipline" in the Local Rules. "All lawyers practicing before this Court shall be governed by and shall comply with the specific rules of practice adopted by this Court, and, unless otherwise provided, with the Code of Professional Responsibility and the Standards of Conduct contained in the Rules and Regulations of the State Bar of Florida and with the decisions of this Court interpreting those rules and standards." *Silvers v. Google, Inc.*, No. 05-80387-CIV-RYSKAMP/VITUNAC, 2007 WL 141153, at *1 (S.D. Fla. Jan. 16, 2007) (citing S.D. Fla. Rules Governing Attorney Discipline, Rule 1). These rules provide that "[d]iscipline for

misconduct defined in these Rules may consist of (1) disbarment, (2) suspension, (3) reprimand, (4) monetary sanctions, (5) removal from this Court's roster of attorneys eligible for practice before this Court, or (6) any other sanction the Court may deem appropriate." S.D. Fla. Rules Governing Attorney Discipline, Rule 1(b). Accordingly, the Undersigned will consider any accusations[3] of attorneys violating the Rules of Professional Conduct under this Rule.

However, at the outset, it should be noted that Laera seeks the extreme sanction of striking various filings as a result of these purported violations. Laera has presented no authority pointing to this specific, extreme sanction for the violations that Laera alleges. The Undersigned's independent research has not located any such authority either.

One additional point concerning legal authority and Laera's Notices:

Each purported violation that Laera points to ultimately leads to the same sought-after relief: striking of the Consent Judgment [ECF No. 76]. It would appear that such relief indicates a Federal Rule of Civil Procedure 60 motion for relief from judgment. However, Laera previously moved for relief under Rule 60 multiple times [ECF Nos. 245; 372], with each being denied [ECF Nos. 251; 389]. Furthermore, Rule 60

---

[3]    Specifically, Laera's "AMENDED NOTICE of Compliance to Rule 4-8.3 Reporting Professional Misconduct Previously Filed as ECF 304" [ECF No. 308], which, in its entirety, addresses only violations of the Florida Rules of Professional Conduct, alerting the Court to what Laera purports are violations of these rules under Rule 4-8.3, instructing attorneys to report certain types of professional misconduct to "the appropriate professional authority."

motions "must be made within a reasonable time -- and [when filed because of mistake and/or fraud, misrepresentation, or misconduct by an opposing party,] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Laera is pointing to purported errors that each occurred between approximately a year and a half to two years before his filing of the Notices.[4] Accordingly, the Undersigned *will not* be interpreting Laera's Notices as an attempt to receive relief from judgment under Rule 60.

## III.    ANALYSIS

There are three filings from Laera [ECF Nos. 307; 308; 315] that the Undersigned will consider in turn, but first, the Undersigned will address Blanco's motion to strike [ECF No. 326] Laera's "Response/Opposition" as an unauthorized reply.

Upon the filing of Laera's "Notices," the Undersigned ordered Blanco to "file a single response of no more than 10 double-spaced pages, excluding signature block and certificate of service[.]" [ECF No. 310]. The Undersigned further specified that "[n]o reply is permitted absent specific, further court order." [*Id.*]. Three days later, in the Court's Order denying Laera's Motion to Continue the evidentiary hearing on the various contempt issues, the Undersigned reiterated the instruction that "no reply is permitted to the omnibus response to the various notices filed by Defendant[.]" [ECF

---

[4]    Laera seeks to strike (at least) ECF Nos. 38; 41; 42; 43; 53; 58; 61; 62; 65; 68; 70; 75; 76, all of which were filed on or before April 5, 2013, while the first of Laera's Notices [ECF No. 303] was filed on October 15, 2014.

No. 312]. Notwithstanding the Court's Order (and further Order reiterating the point that no reply is permitted), Laera filed a document styled as "Response/Opposition to [74] Order; [73] Mediation Report; [75] Stipulation of Dismissal; [65] Joint Motion to Modify Order Scheduling Mediation; [61] Motion in Response to Court Order Requiring Parties to File Proposed Consent Judgment; [62] Response/Reply/Other; [70] Notice of Mediation; and [68] Unopposed Motion to Modify Court Order Rescheduling Settlement Mediation by Vito Antonio Laera" [ECF No. 321].

While Laera contends that this document "is not a response or opposition to . . . ECF 316[,]" he nevertheless proceeds with a direct response to the eight Notices of Electronic Filing relating to ECF Nos. 61; 62; 65; 68; 70; 73; 74; 75 that are attached to Blanco's omnibus response [ECF NO. 316], claiming that these notices were not served or signed properly, essentially rehashing all of his arguments in the initial Notices. Accordingly, despite Laera's contentions to the contrary, it is clear that his contumacious, vexatious,[5] contemptuous[6] conduct continues with his filing of this unauthorized reply, and so the Undersigned **ORDERS** that docket entry 321 (and by extension, docket entry 327) be **STRICKEN**.

---

[5]     *See* ECF No. 389 (Order of District Judge Joan A. Lenard declaring Laera a "vexatious litigant" and enjoining him from further Court filings without prior judicial permission, in order to curb his "impulsive, injudicious, and indefatigable practice of filing motions and 'notices.'")

[6]     *See* ECF Nos. 195; 249; 353.

Laera's Notices are disorganized and rambling, while frequently repeating accusations. However, the common theme throughout is Laera's accusation that four specific individuals engaged in various wrongdoing: Scott Dangler ("Dangler"), who is corporate counsel for Blanco, Franka Kuschmirek ("Kuschmirek"), who is a corporate representative of Blanco, Francis Kubler ("Kubler"), who is a former defense counsel, and Diana Centorino ("Centorino"), who is another former defense counsel. It thus makes organizational sense to attempt to address Laera's Notices through the accusations levied at each of these individuals, plus his miscellaneous accusations concerning the Court and the Mediator.

A.  **Accusations Against Dangler**

In the first [ECF No. 307] and second [ECF No. 308] Notices, Laera claims that Dangler failed to serve ECF Nos. 61; 65; 68; 70; 75 on either Laera personally, or on his defense counsel, Centorino. [ECF Nos. 307, p. 21; 308, p. 5]. To substantiate this claim, Laera first asserts that Centorino was not admitted to this Court and, therefore, was not competent to act as counsel or to receive CM/ECF notices. Laera is mistaken on both counts. While Centorino was initially denied *pro hac vice* status [ECF No. 44] because she resides in the District, she then immediately sought and was granted admittance to the Bar for the Southern District of Florida [ECF No. 316-1]. As such, Centorino was officially defense counsel in this case as of January 14, 2013 [ECF No. 58 (Notice of Appearance "**as counsel for Vito Antonio Laera**") (emphasis added)], and remained

9

counsel of record until August 8, 2013, when Magistrate Judge Patrick Hunt granted [ECF No. 117] Centorino's motion to withdraw [ECF NO. 86] as counsel for both the corporate defendants *and* Laera individually. Each of the filings in which Laera contests Dangler's service were in fact electronically noticed to Centorino, who was Laera's counsel at the time. [ECF No. 316-2].

Laera makes the additional claim that he was *pro se* at the time that each of the above documents were filed, and he therefore argues that any service on Centorino would not be considered served on him because he must be served by U.S. mail. This, however, is incorrect. The record in this case, contrary to Laera's contention, is abundantly clear on this point. As the Court noted above, Centorino was counsel of record for Laera as of January 14, 2013, according to her notice of appearance [ECF No. 58] on his behalf. Laera was copied on this notice of appearance. [*Id.*, at p. 2]. Laera was also copied on all written communications between Blanco's counsel and Centorino, each of which clearly expresses that Centorino is acting on Laera's behalf or even expressly refers to Laera as Centorino's client. [ECF Nos. 316-3, p. 2; 316-4, p. 4]. Furthermore, the Addendum to the Stipulation of Settlement [ECF No. 95-2] that ***Laera himself personally executed*** [*Id.*, at p. 6 (signed by Laera ***three*** times, in his individual capacity and as president of the two co-defendant business entities, Vlanco Industries LLC and G-Tech-I, Inc.)], specifically refers to both Centorino and Kubler as attorneys for Laera [*Id.*].

10

Laera's contention that Dangler never served him with any of the above docket entries is baseless for the reasons shown above, and therefore, the Court finds no foundation that any misconduct, or even an innocent mistake, occurred concerning the service of ECF Nos. 61; 65; 68; 70; 75 that would require the Court to take any action under the Rules of Professional Conduct or Rule 11.

Laera further claims that Dangler violated various rules of professional conduct by engaging in name-calling that defamed Laera at an August 18, 2014[7] telephone hearing held before the Undersigned. [ECF No. 308, p. 5]. Laera specifically claims that Dangler called him a "Liar and a Thief (or Cheat)." [*Id.*]. Laera also contends that Dangler personally disparaged him in other filings shortly thereafter. [*Id.*, at pp. 5-6]. Dangler and Blanco reject Laera's accusation, and claim that when considered in the appropriate context -- i.e. when one considers Laera's conduct in these proceedings -- the statement represents a statement of opinion based on supportable fact, which is protected by the litigation privilege. [ECF No. 316, p. 3].

"Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings." *Jackson v. BellSouth Tele.*, 372 F.3d 1250, 1274 (11th Cir. 2004). Specifically, the litigation privilege applies when the complained-of act "involves a defamatory statement . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.*

---

[7]    Laera's filing [ECF No. 308] claims the hearing took place on August 18, 201**3**; however, the matter was actually heard in 201**4** [*See* ECF No. 284].

*Co.*, 639 So.2d 606, 607-08 (Fla. 1994) (quoted by *Jackson*, 372 F.3d at 1274). Laera, himself, notes that this complained-of defamatory statement occurred during a hearing before the Undersigned -- thereby triggering the litigation privilege.[8] [ECF No. 308, p. 5].

Laera contends that Dangler's statement is dishonest and therefore a violation of the Rules of Professional Conduct. Laera's interpretation is not well taken. First, the statement is clearly one of *opinion* that was uttered in a protected judicial proceeding. While the Undersigned does not appreciate name-calling and will not tolerate that type of immature behavior in the courtroom, it is readily apparent from the record before the Undersigned (and from the Undersigned's own recollection) that the context of this statement relates to Laera's claim that he was not served notice of an August 1, 2014 telephone conference that was scheduled before the Undersigned. Given Dangler's multi-faceted efforts (email, FedEx and cell phone) to provide notice to Laera [ECF No. 278-1], Dangler challenged the accuracy of Laera's claims of lack of service. Given

---

[8]     The Undersigned was personally present at the hearing and does not recollect any such defamatory statement being uttered. Laera has not submitted a transcript of the hearing to confirm his memory of what was said. Nevertheless, even if the statement was made, Laera's contention about the statement's effect is overblown. First, the statement, if made, was not significant enough for the Undersigned to remember it. Second, the Undersigned is not swayed by these type of bluntly-worded accusations of inappropriate language, so Laera may rest assured that the statement in this context had no bearing on the Undersigned's ability to even-handedly address the parties' claims in this matter. Furthermore, if a party did in fact engage in abusive conduct in a hearing before the Undersigned -- which *did not* occur in this instance -- the Undersigned would have promptly defused the situation and appropriately addressed any such misconduct.

Laera's well-documented pattern of evasive behavior in this proceeding [*see e.g.* ECF No. 339, pp. 129-38 (Laera's own testimony at the evidentiary hearing before the Undersigned where he was evasive in the providing of his own phone number, physical address and email address)], the Court finds the expression of such suspicion not unreasonable, even if inartfully articulated.

Accordingly, Laera's accusation that Dangler committed any sort of punishable misconduct through statements made at the telephonic hearing is without merit. Furthermore, Laera's accusation [ECF No. 308, pp. 6-8] that Dangler made other disparaging remarks in court filings that somehow constitute a violation of the Rules of Professional Conduct is also not well taken. First, the Court cannot find the specific document to which Laera refers (a document dated September 24, 2014 does not exist on this docket), and second, the statements that Laera does refer to in his Notice would be protected by the litigation privilege if those statements did in fact exist. Additionally, the statements to which Laera refers include Dangler *quoting Laera himself*. It is illogical to conclude that Dangler violated a Rule of Professional Conduct by quoting the apparently-defamed individual. Thus, the Court finds this accusation from Laera baseless and not worthy of any disciplinary action.

Laera further accuses Dangler of certain misconduct at the second mediation that resulted in the Stipulation of Settlement that disposed of (or at least was *supposed to* dispose of) this case. [ECF No. 308, pp. 7-12]. Laera's accusations about misconduct at

mediation by Dangler (or any other party, counsel or the mediator himself) are not well taken, because 1) Laera's account of the purported misconduct is rambling to the point that the Undersigned cannot discern what exactly the complaint is, and 2) mediation communications are *privileged* and therefore any unauthorized communications or actions by the parties or their counsel at mediation cannot be considered for the purpose of this motion. There may be some type of extreme misconduct, such as pointing a loaded gun at a party during mediation in order to pressure a settlement, which might result in the sanctions Laera requests here, but the purported mediation misconduct is hardly that type of outrageous activity.

So, to begin, Laera seems to be accusing Dangler of verbally berating Laera's counsel, Kubler (who, according to Laera -- when it is convenient to him and whatever argument it is he is trying to make [*see* ECF No. 307, pp. 1-2] -- is or was not actually his counsel at the time of the mediation) [ECF No. 308, p. 8], while also suborning some sort of collusion between Kuschmirek and *Laera himself* [ECF No. 308, p. 8]. As noted above, *pro se* litigants are to be granted some leeway in their pleadings; however, the Court is not responsible for rewriting each filing such that it actually makes sense. The alleged facts presented by Laera are frivolous and so the Court rejects whatever argument that Laera is attempting to make concerning the mediation.

Local Rule 16.2 (Court Annexed Mediation) provides, in subsection (a), that "the mediation process does not allow for testimony of witnesses." It further provides that,

"absent a settlement, the mediator will report to the presiding Judge *only* as to whether the case settled (in full or in part) or was adjourned for further mediation, whether the mediator declared an impasse, and pursuant to Local Rule 16.2(e), whether any party failed to attend the mediation." (emphasis added). In addition, subsection (g)(2), entitled "Restrictions on the Use of Information Derived During the Mediation Conference," expressly provides that "all proceedings of the mediation shall be *confidential* and are *privileged in all respects* as provided under the federal law and Florida Statutes § 44.405." (emphasis added).

Florida Statutes Section 44.405 provides that "all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel." Fla. Stat. § 44.405(1). Laera's disclosure of (purported) activities at mediation violates the confidentiality requirements of both the local rule and the Florida statute it incorporates. *See* Fla. Stat. 44.405(4)(a).[9]

---

[9]     (4)(a) Notwithstanding subsections (1) and (2), there is no confidentiality or privilege attached to a signed written agreement reached during a mediation, unless the parties agree otherwise, or for any mediation communication:

> 1. For which the confidentiality or privilege against disclosure has been waived by all parties;
> 2. That is willfully used to plan a crime, commit or attempt to commit a crime, conceal ongoing criminal activity, or threaten violence;
> 3. That requires a mandatory report pursuant to chapter 39 or chapter 415 solely for the purpose of making the mandatory report to the entity requiring the report;

While it is apparent that Laera is attempting to prove some sort of misconduct that purportedly occurred during mediation (though, of course, the Undersigned is unable to make sense of said misconduct from Laera's proffered facts), such a breaking of the privilege is reserved "solely for the purpose of the professional malpractice proceeding[,]" which this most certainly is not. *Id.* Laera is also not presenting any grounds for voiding or reforming the settlement agreement in this matter, which was 1) signed without complaint from Laera nearly two years ago and 2) was *personally signed by Laera three times*. Therefore, the Undersigned (again) does not find any misconduct on Dangler's part (nor could I from this account of privileged communications presented by Laera) and finds no legal grounds to impose any sort of sanction.

Laera's last complaint concerning Dangler is that some purported misconduct by Dangler resulted in two court filings -- a Joint Motion to Modify Court Order Scheduling Mediation and the Stipulation of Dismissal [ECF Nos. 65; 75] -- not being purportedly signed by Centorino (who, the Court presumes, for the convenience of this argument, Laera *is* considering his counsel at the time of filing). [ECF No. 315].

---

4. Offered to report, prove, or disprove professional malpractice occurring during the mediation, solely for the purpose of the professional malpractice proceeding;

5. Offered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation; or

6. Offered to report, prove, or disprove professional misconduct occurring during the mediation, solely for the internal use of the body conducting the investigation of the conduct.

Regardless of Laera's unfounded accusation, however, the Undersigned finds that each document is clearly and appropriately signed electronically (i.e. "/s/ Diana Waterous Centorino") by Centorino. [*See* ECF Nos. 65, p. 3; 75, p. 2]. Even a cursory look at each of these documents reveals that Laera again has submitted a meritless accusation.

Accordingly, the Undersigned recommends that Laera's notices/motions for relief against Dangler for myriad purported misconduct be denied.

### B.     Accusations Against Kuschmirek

In addition to the accusation mentioned (and rejected) above concerning Kuschmirek's apparent collusion with *Laera himself* at the mediation (*see* Section A above), Laera accuses Kuschmirek of violating Florida Bar Rules 4-8.4(a), 4-8.4(c) and 4-8.4(d) in relation to the mediation. [ECF No. 308, pp. 8-9, 14-17]. While Kuschmirek may technically be an attorney by trade, she *is not* an attorney in this case, nor is she licensed in the state of Florida or admitted *pro hac vice* to represent Blanco in any legal capacity. Instead, she is a corporate representative of the plaintiff entity, Blanco. Therefore, all her actions in this case and interactions with Laera have been in that capacity.

Under Florida Bar Rule 3-4.1, "[j]urisdiction over a lawyer of another state who is not a member of The Florida Bar is limited to conduct as a lawyer in relation to the business for which the lawyer was permitted to practice in this state[.]" Because Kuschmirek was not practicing law or engaged in conduct as a lawyer permitted to practice in this State, the Rules to which Laera cites are inapplicable. Therefore, even if

the Undersigned were to understand and consider Laera's accusations of purported

misconduct at the *privileged* mediation, Laera's allegations of professional misconduct

by an attorney practicing before this Court are mooted by the fact that Kuschmirek *is*

*not* an attorney practicing before this Court.

    **C.**    **Accusations Against Centorino**

Laera first accuses Centorino of not being admitted to practice before this Court

and therefore deems her unable to have represented any of the defendants in this case.

[ECF Nos. 307; 308]. However, as the Undersigned noted above concerning Laera's

unfounded accusations against Dangler, while Centorino was **initially** denied *pro hac*

*vice* status [ECF No. 44] because she resides in the District, she then immediately sought

and was granted admittance to the Bar for the Southern District of Florida [ECF No.

316-1]. As such, Centorino was officially defense counsel in this case as of January 14,

2013 [ECF No. 58 (Notice of Appearance "**as counsel for Vito Antonio Laera**")

(emphasis added)], and remained counsel of record until August 8, 2013, when

Magistrate Judge Patrick Hunt granted [ECF No. 117] Centorino's motion to withdraw

[ECF NO. 86] as counsel for both the corporate defendants *and* Laera individually.

Therefore, all of Laera's accusations of rules violations centering upon that point are

moot, as the record clearly demonstrates that Centorino was authorized to practice in

this District, in this case, and specifically on behalf of Laera.

Furthermore, while Laera makes the leap to call into question Centorino's ability to bind himself and the other defendants in this case with a settlement [ECF No. 308, pp. 22-33], it was *Laera himself* who on *three different lines* signed the Addendum of Stipulation of Settlement filed in this case on the very same page that **declared Centorino as his counsel.** [ECF No. 95-2, p. 6]. Needless to say, Laera's accusations on these grounds are baseless and do not warrant any remedy to be imposed by this Court.

In his next allegation, Laera claims that Centorino failed to serve him a copy of the Stipulation of Dismissal [ECF No. 75]. [ECF No. 307, p. 23]. The Court again notes that Centorino was Laera's counsel, so she signed and filed that document on Laera's behalf. As his *counsel of record in this case* -- which was undisputed by Laera until more than a year passed and two hundred docket entries were filed in this case, including serious findings of contemptuous conduct against Laera -- Centorino was the one who was required to be served on his behalf. The Certificate of Service on this filing notes that the document was "served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF." [ECF No. 75, p. 2]. Laera's accusations that he was not served a copy of this document are baseless and should be rejected by the District Court. To the extent that Laera has a dispute with his own former counsel about an alleged failure to timely send him a copy of the settlement stipulation, that may concern an accusation which, if true, could be pursued with either the Florida Bar or this District's Ad Hoc Committee on Attorney Admission, Peer

Review and Attorney Grievance.  It is not a reason for this Court to impose the sanctions Laera requests here.

Lastly, concerning Centorino, Laera further complains that Centorino and/or Kubler failed to sign docket entries 58 and 62. [ECF Nos. 308, pp. 32-36; 315, pp. 5-6]. However, the Case Management Electronic Case Filing CM/ECF Administrative Procedures clearly provides: "[w]hen a User files a document electronically using his/her login and password, that document shall be considered signed by the attorney to whom the login and password were issued for purposes of the Local Rules and Federal Rules of Civil Procedure and Federal Rules of Criminal Procedure, including Rule 11 of the Federal Rules of Civil Procedure." As such, these papers have been "signed," and thus there is no defect in filing for which the Undersigned could find a violation of any procedural or substantive rules violation.

### D.   <u>Accusations Against Kubler</u>

Laera complains that Kubler failed to serve him with copies of ECF Nos. 38; 41; 42; 43; 53; 58; 62. [ECF Nos. 307; 308]. However, Laera is clearly identified in the Certificate of Service as a recipient with respect to ECF Nos. 38; 42; 43; 53; 62.[10] Similarly, with respect to docket entries 41 and 58, Laera is clearly identified as a

---

[10]    Furthermore, the Undersigned endeavored to check the Notice of Electronic Filing for each of these documents on the docket sheet and confirmed that the Clerk's office took note of Laera's name in each Certificate of Service and mailed a copy of them to his physical address, which was on file with the Court at the time.

recipient via a courtesy copy.[11] Moreover, as established above, Centorino was counsel for Laera individually for, at a minimum, the period of January 14, 2013 [ECF No. 58] through August 8, 2013 [ECF No. 117]. As such, service of ECF No. 62 on Centorino constituted service on Laera. [*See* ECF No. 316-7].

Accordingly, with regard to Kubler, the Undersigned finds no violations of procedural rules, nor any indications of professional misconduct. Laera's accusations (again) prove meritless.

### E. <u>Accusations Against the Mediator</u>

Laera complains that Mediator Christopher failed to serve him with a copy of the Final Mediation Report [ECF No. 73]. [ECF No. 307, p. 26]. As established above, Centorino was counsel for Laera individually as of the time of issuance of the Mediation Report (the report was entered on March 26, 2013, which falls between the period of January 14, 2013 [ECF No. 58] through August 8, 2013 [ECF No. 117], a time when the Court has established that Centorino was Laera's counsel). As such, service of Docket Entry 73 on Centorino also constituted service on Laera. Furthermore, the Court's review of the Notice of Electronic Filing for this document on the docket sheet indicates that it was also mailed to Laera individually.

Additionally, even if Laera never received a copy of the filing, it would not warrant the extraordinary relief requested (i.e., the striking of the filing). Moreover,

---

[11]   Once again, the Undersigned's review of the docket record indicates that the Clerk's office made note of Laera's designation and served him a copy via mail.

service (or lack thereof) of the Mediation Report *would not have any bearing* on the underlying proceedings or, most importantly, the Stipulation of Settlement, as amended, which was executed by Laera and to which was attached a copy of the agreed upon Consent Judgment to be entered by the Court. [ECF No. 95-2]. Therefore, having found no misconduct or procedural errors on behalf of the Mediator, the Undersigned recommends that the District Court grant Laera no relief on these meritless accusations as well.

### F.    <u>Accusations Against the Court</u>

Laera also accuses the Court of not serving him a copy of the Order Denying Centorino *Pro Hac Vice* Status [ECF No. 44] and the Order Requiring Stipulation of Dismissal [ECF No. 74]. [ECF Nos. 307, pp. 22, 26]. As established previously, Centorino was counsel for Laera individually as of the date of the Court's Order Requiring Stipulation of Dismissal [ECF No. 74]. As such, service of that document on Centorino constituted service on Laera. Therefore, this accusation is fruitless.

While the Order Denying Centorino *Pro Hac Vice* Status does not explicitly say so on its face, a check of the Notice of Electronic Filing for the document on CM/ECF reveals that, indeed, the Clerk's office was to mail a copy to Laera personally. Because Centorino had not yet appeared, or been approved to appear on his behalf yet, Laera was still on the record as the counsel of record for himself, and so Judge Rosenbaum's direction of "Copies to: Counsel of record" encompasses Laera. Therefore, the Court did

appropriately serve Laera these documents and there are, once again, no grounds for any relief that Laera may seek.

**G.** **Blanco's Request for Attorney's Fees and Costs**

Blanco requests reasonable attorney's fees and costs in the amount of $3,854.00 for having to respond to Laera's motion. However, Blanco has provided no legal grounds on which to base this request for costs. Accordingly, the Undersigned **denies this request without prejudice**. If Blanco wishes, it may file a separate motion for these fees and costs, complete with a legal basis for such fees by separate motion. Of course, Blanco already holds judgments totaling more than $820,000 (plus the various fines and fees imposed in the Court's contempt findings) against Laera which have apparently been unpaid, so Blanco may want to engage in a cost-benefit analysis concerning the effort it would need to make in order to successfully pursue the right to collect an additional amount of less than $4,000.

**IV.   CONCLUSION**

For the reasons established above, the Undersigned **grants** Blanco's motion to strike [ECF No. 326], **denies without prejudice** Blanco's motion for attorney's fees and costs [ECF No. 316], and **respectfully recommends** that Laera's motions [ECF Nos. 303; 304; 307; 308; 315] be **denied**.

## V.     OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the Parties have **14** days after being served with a copy of this Report and Recommendations to serve and file written objections, if any, with the District Court. Each Party may file a response to the other Party's objection within **7** days of the objection. Failure to file timely objections shall bar the Parties from a de novo determination by the District Court of an issue covered in this Report and Recommendations and bar the Parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

**Respectfully recommended and Ordered**, in Chambers, in Miami, Florida, on July 30, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Joan A. Lenard
All counsel of record

Vito Antonio Laera, *pro se*
230 South Tryon
Suite 708
Charlotte, NC 28202